UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**MADDELIN CUSTODIO,**

    **Plaintiff,**

v.

**ANDREW SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

Case No. 2:18-cv-11842
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the current applications of Plaintiff Maddelin Custodio for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed her current applications for disability insurance benefits and supplemental security income,[1] alleging that she has been disabled since January 26, 2012. R. 15, 299,

---

[1] A copy of Plaintiff's application for supplemental security income is not included in the administrative record.

1

340–42.² The applications were denied initially and upon reconsideration. R. 141–44, 146–48. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 149–50. Administrative Law Judge Dennis O'Leary ("ALJ") held a hearing on August 29, 2016, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 80–99. In a decision dated September 12, 2016, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 26, 2012, the alleged disability onset date, through the date of that decision. R. 15–22. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 15, 2018. R. 1–8. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 7, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.³ On March 12, 2020, the case was reassigned to the undersigned. ECF No. 24. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

² Plaintiff previously applied for disability insurance benefits on October 5, 2009. R. 103. In a decision dated January 25, 2012, Administrative Law Judge Dennis O'Leary, who is also the Administrative Law Judge in the present case, concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 12, 2008, the disability onset date alleged in that application, through the date of the decision. R. 103–12. The Appeals Council declined review, R. 117–20, and Plaintiff did not appeal from that decision.

³ The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

3

2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ's DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 26, 2012, her alleged disability onset date, and the date of the 2016 decision. R. 15–22.

At step two, the ALJ found that Plaintiff's musculoskeletal impairments of the lumbosacral spine were severe but that Plaintiff's depression was not severe. R. 17–18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to certain additional limitations. R. 18−21. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a tax clerk. R. 21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 26, 2012, her alleged disability onset date, through the date of that decision. R. 21−22.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 31. The Commissioner takes the position that this decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 32.

## IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE

On March 5, 2014, Plaintiff's treating physician, Antonio Noriega, M.D., completed a preprinted, check-the-box and fill-in-the-blank medical source statement. R. 457–61. Dr. Noriega indicated that he first examined Plaintiff on April 17, 2012, and saw her every two to three months thereafter and most recently on November 26, 2013. R. 457. Dr. Noriega diagnosed chronic low back pain; disc bulge and stenosis; disc protrusion; radiculopathy; and obesity. *Id.* He referred to an EMG and MRI from 2013 to support these diagnoses. *Id.* Dr. Noriega characterized Plaintiff's pain complaints as moderate / severe, occurring daily in the low back region and in both legs, and which is affected by physical activities and medicine compliance. *Id.* According to Dr. Noriega, Plaintiff's pain and other symptoms are sufficiently severe to frequently interfere with the attention and concentration needed to perform even simple work tasks. R. 458. Dr. Noriega identified positive objective signs of reduced range of motion (low back, 45 degrees), positive straight leg raising, sensory loss (decreased sensation of both legs), crepitus, weight change, and impaired sleep. *Id.* Dr. Noriega denied that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. *Id.*

Dr. Noriega opined that Plaintiff could walk one to two city blocks without resting or severe pain; sit for 20 to 30 minutes at one time; stand for 15 minutes; and stand/walk for less than two hours in an eight-hour workday; she would need five to ten-minute periods of walking every 30 to 45 minutes, a job that permits shifting positions at will from sitting, standing, or walking, and an unscheduled 15 to 20-minute break every two hours. R. 458–59. Dr. Noriega further opined that Plaintiff could frequently lift less than 10 pounds; occasionally lift 10 pounds; rarely lift 20 pounds; and never lift 50 pounds. R. 460. According to Dr. Noriega, Plaintiff had no significant limitations with reaching, handling, or fingering. *Id*. Dr. Noriega went on to opine that Plaintiff's impairments were likely to produce "good days" and "bad days" and that Plaintiff was likely to be absent from work about four days per month. *Id*. Dr. Noriega noted that Plaintiff's symptoms and limitations began on August 14, 2012. *Id*.

Plaintiff's weight was recorded as 220 pounds; her BMI was listed as 37. *See, e.g.,* R. 474.

## V.     DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred by failing to consider Plaintiff's diagnosed obesity at any step in the sequential evaluation. *Plaintiff's Moving Brief*, ECF No. 31, pp. 14–15, n. 5, 20. This Court agrees.

Although obesity was removed as a "listed impairment" in 1999, the Court of Appeals for the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an

9

individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id.* "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.").

> SSR 02-1p provides in relevant part as follows:
>
> [W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.
>
> . . . .
>
> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.
>
> For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function. . . .
>
> We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause

> (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .
>
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. [Footnote omitted.]
>
> However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. 57859-02. Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (quoting *Jones,* 364 F.3d at 505).

Here, although Plaintiff's treating physician diagnosed obesity, R. 468, the ALJ did not discuss or even refer to that condition at any step in the sequential evaluation. *See generally* R. 15–22. Significantly, the ALJ failed to consider the impact of Plaintiff's diagnosed obesity on her musculoskeletal impairments. R. 15–22; *see also* SSR 02-1p ("[Obesity] commonly leads to,

11

and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems."). Moreover, the Commissioner does not address this error. *See generally Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 32.

A failure to meaningfully discuss a claimant's obesity may be harmless under some circumstances. *Cf. Woodson,* 661 F. App'x at 765–66. Here, however, the Court cannot conclude that the ALJ's failure to either recognize or consider Plaintiff's diagnosed obesity was harmless. *See Rodriguez v. Saul*, No. CV-19-21473, 2021 WL 1712395, at *4–5 (D.N.J. Apr. 29, 2021) ("But the ALJ made no finding at all as to obesity. Obesity is simply mentioned in passing by way of a mention in the report of a doctor who was diagnosing sleep apnea. . . . Again, however, the ALJ did not analyze the plaintiff's BMI of 52 or its effect on her other impairments or activities."); *cf. Diaz*, 577 F.3d at 504–05 (3d Cir. 2009) ("Accordingly, the District Court's critical determination—that the ALJ's citation of reports by doctors who were aware of Diaz's obesity sufficed—was error. Were there *any discussion* of the combined effect of Diaz's impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function.") (emphasis added).

An ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones,* 364 F.3d at 505. As it relates to Plaintiff's obesity, the Commissioner's decision does not satisfy this standard for the reasons discussed above. "It may well be the case that the ALJ will arrive at the same decision after he properly considers the obesity of Plaintiff. At this juncture, however, the ALJ must set forth his consideration of Plaintiff's obesity." *Korcz v. Comm'r of Soc. Sec*., No. CV 16-1039, 2017 WL 776104, at *4–5 (D.N.J. Feb. 28, 2017). The Court therefore concludes that the decision of the

Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of this issue.[4]

## VI.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 21, 2021                                           *s/Norah McCann King*
                                                            NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for consideration of Plaintiff's diagnosed obesity, the Court does not consider those claims.